```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   |
ESTHER KIOBEL, et al.,             |
                                   |
            Plaintiffs,            |
                                   |   02 Civ. 7618 (KMW) (HBP)
     -against-                     |
                                   |
ROYAL DUTCH PETROLEUM CO., et al., |
                                   |
            Defendants.            |
                                   |
-----------------------------------X
                                   |
KEN WIWA, et al.,                  |
                                   |
            Plaintiffs,            |
                                   |   04 Civ. 2665 (KMW) (HBP)
     -against-                     |
                                   |   OPINION AND ORDER
SHELL PETROLEUM DEVELOPMENT        |
COMPANY of NIGERIA LIMITED,        |
                                   |
            Defendant.             |
                                   |
-----------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

The two above-captioned cases are part of a set of four
related actions involving allegations of human rights violations
in Nigeria during the 1990s.  Currently before the Court are (1)
Defendant Shell Petroleum Development Company of Nigeria
Limited's ("SPDC") Motion to Dismiss for Lack of Personal
Jurisdiction, filed in both cases, and (2) objections to
Magistrate Judge Henry B. Pitman's February 26, 2007 Order
granting SPDC's Motion to Preclude Plaintiffs from Taking Further
Jurisdictional Discovery, filed by Plaintiffs in Wiwa, et al. v.

1

Shell Petroleum Development Co. ("Wiwa III").  For the reasons

set forth below, SPDC's Motion to Dismiss is granted in both

cases.  In granting the Motion to Dismiss, the Court also

concludes that additional jurisdictional discovery is unwarranted

in either case.  The Court therefore need not consider the Wiwa

III Plaintiffs' objections to Magistrate Judge Pitman's February

26, 2007 Order.

―――――――――

**BACKGROUND**

**I.    FACTUAL BACKGROUND.**

A more detailed description of the facts underlying these

cases is provided in the Court's previous orders in these and

their related actions, familiarity with which is presumed.  See,

e.g., Kiobel, et al. v. Royal Dutch Petroleum Co., et al., 456 F.

Supp. 2d 457 (S.D.N.Y. 2006); Wiwa, et al. v. Royal Dutch

Petroleum Co., et al., No. 96 Civ. 8386, 2002 WL 319887 (S.D.N.Y.

Feb. 28, 2002).

SPDC is a foreign corporation organized under the laws of

Nigeria, with corporate headquarters located in Lagos, Nigeria.

(Kiobel Amended Compl. ¶ 20; Wiwa III Compl. ¶ 17.)  SPDC is

primarily engaged in the business of exploring for, producing,

and selling energy products derived from Nigerian oil and natural

gas.  (Kiobel Amended Compl. ¶ 22; Wiwa III Compl. ¶ 18.)  During

the 1990s, SPDC, along with its affiliates, engaged in oil

exploration and development activities in the Ogoni region of southern Nigeria.

Plaintiffs are a group of individuals, who along with their decedents, actively protested SPDC's oil exploration and development activities in the Ogoni region. Plaintiffs allege that their lawful protests were violently suppressed by agents of the Nigerian government either in conspiracy with SPDC and their affiliates, or at SPDC's own request. Plaintiffs bring their respective actions alleging violations of international, federal, and state law in connection with these acts of violence and purported human rights abuses.

## II.  PROCEDURAL HISTORY.

Kiobel and Wiwa III are the most recent of four related cases, all seeking similar damages and relief for the alleged human rights violations perpetrated against residents of the Ogoni region of Nigeria during the 1990s. The first two of these related actions, Wiwa, et al. v. Royal Dutch Petroleum Co., et al. ("Wiwa I") and Wiwa, et al. v. Anderson ("Wiwa II"), were filed on November 6, 1996 and March 5, 2001, respectively.[1] Plaintiffs in Kiobel filed their original Complaint on September 20, 2002, and their Amended Complaint on May 17, 2004. Plaintiffs in Wiwa III filed their Complaint on April 6, 2004.

---

[1] Wiwa I and Wiwa II were consolidated for all pretrial purposes by the Court's Order, dated February 22, 2003.

SPDC is named as a defendant only in the <u>Kiobel</u> Amended Complaint and in the <u>Wiwa III</u> Complaint.

Pretrial proceedings in all four related actions have been largely coordinated.  In particular, the parties in these related cases have for the most part shared discovery.  As such, Plaintiffs in <u>Kiobel</u> and <u>Wiwa III</u> have access to the extensive discovery taken in <u>Wiwa I</u> and <u>Wiwa II</u> over the past ten years. (<u>Kiobel</u> Pretrial Conference, Oct. 18, 2002; Joint Letter from <u>Wiwa III</u> Parties 1, Aug. 18, 2004.)  This includes discovery taken from SPDC.  (Def.'s Mem. Law. Supp. Mot. to Dismiss 3-4 nn.6&7.)

By Scheduling Order, dated December 28, 2006, Magistrate Judge Pitman directed SPDC to file any Rule 12 motion it sought to submit along with a "separate motion addressing the issue of discovery on the question of personal jurisdiction."  In accordance with this Scheduling Order, SPDC moved, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the claims filed against it for lack of personal jurisdiction on January 30, 2007 ("Motion to Dismiss").[2]  In a separate motion, dated January 31, 2007, SPDC also moved, pursuant to Federal Rules of Civil

---

[2] In the same submission, SPDC also moved, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings, and to strike certain allegations from the <u>Wiwa III</u> Complaint.  On July 9, 2007, Magistrate Judge Pitman stayed these motions, pending the Second Circuit's decision on the parties' appeal of the Court's September 29, 2006 Order in <u>Kiobel</u>.  (Memo Endorsement of Letter from Stephen A. Whinston, Jul. 9, 2007.)  No decision has been issued from the Court of Appeals on the appeal from the September 29, 2006 Order.

Procedure 26(b)(2)(C)(ii) and (c)(1), to preclude the taking of further jurisdictional discovery from SPDC ("Motion to Preclude"). The Motion to Dismiss and the Motion to Preclude were filed in both Kiobel and Wiwa III.

On February 22, 2007, Magistrate Judge Pitman heard oral argument on the Motion to Preclude. By Order dated February 26, 2007, he granted SPDC's Motion to Preclude "for the reasons stated on the record in open court" during oral argument. Although this order was originally entered in both cases, it was subsequently modified to bind only the Wiwa III parties.[3] The Plaintiffs in Wiwa III then filed timely written objections to the February 26, 2007 Order.

The Court now addresses the pending Motion to Dismiss,[4] and

---

[3] Upon receiving notice of the February 26, 2007 Order, the Kiobel Plaintiffs moved to vacate, or in the alternative, for reconsideration of the order, arguing that they were not made aware that the Motion to Preclude had been filed in their case. The Kiobel Plaintiffs argued that they neither filed an opposition to SPDC's Motion to Preclude, nor participated in the oral argument on the motion. (Kiobel Mot. to Vacate 1-3, Mar. 8, 2007.) By Order, dated April 19, 2007, Magistrate Judge Pitman granted the Kiobel Plaintiffs' motion to vacate his order to the extent that it was entered in the Kiobel case. The February 26, 2007 Order therefore applies only to Wiwa III.

[4] Pursuant to the December 28, 2006 Scheduling Order, Plaintiffs' obligation to respond to the Motion to Dismiss was adjourned sine die, pending resolution of the Motion to Preclude. Following Magistrate Judge Pitman's ruling on the Motion to Preclude, all proceedings on SPDC's Motion to Dismiss were stayed pending the Court's review of the Wiwa III Plaintiffs' objections to the magistrate judge's ruling. (Memo Endorsement of Letter from Stephen A. Whinston, Jul. 9, 2007.) Upon consideration of these objections, the Court lifted the stay on the Motion to Dismiss, and ordered the parties to complete briefing on the motion, so as to consider the Motion to Dismiss and the objections together. (Order, Sept. 10, 2007.)

the <u>Wiwa III</u> Plaintiffs' objections to Magistrate Judge Pitman's

February 26, 2007 Order. _____

_____

**DISCUSSION**

This Order addresses (1) SPDC's Motion to Dismiss, filed in

<u>Kiobel</u> and <u>Wiwa III</u>, and (2) the <u>Wiwa III</u> Plaintiffs' objections

to Magistrate Judge Pitman's February 27, 2007 Order granting

SPDC's Motion to Preclude.

**I.    SPDC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

**A.    *The Motion to Dismiss Standard.***

SPDC moves, pursuant to Federal Rule of Civil Procedure

12(b)(2), to dismiss the claims filed against it in <u>Kiobel</u> and

<u>Wiwa III</u> for lack of personal jurisdiction.  On a Rule 12(b)(2)

motion to dismiss, plaintiff bears the burden of establishing

jurisdiction over defendant.  <u>Metropolitan Life Ins. Co. v.</u>

<u>Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996); <u>Smit v.</u>

<u>Isiklar Holding A.S.</u>, 354 F. Supp. 2d 260, 263-64 (S.D.N.Y.

2005).  Prior to discovery and in the absence of an evidentiary

hearing, plaintiff can defeat a Rule 12(b)(2) motion to dismiss

"by pleading in good faith, legally sufficient allegations of

jurisdiction, i.e., by making a prima facie showing of

jurisdiction." <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181,

184 (2d Cir. 1998) (quoting <u>Ball v. Metallurgie Hoboken-Overpelt,</u>

<u>S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990)) (internal quotations and

citations omitted).  After discovery, plaintiff's prima facie case must be factually supported, that is, it must "include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."  <u>Ball</u>, 902 F.2d at 197.  In this case, Plaintiffs have access to the extensive discovery taken in connection with the prior related actions, including discovery from SPDC.  The Court therefore applies the post-discovery prima facie standard, and will credit all of Plaintiffs' factual averments as true.  <u>See</u> <u>Pilates, Inc. v. Pilates Institute, Inc.</u>, 891 F. Supp. 175, 178 (S.D.N.Y. 1995) (applying the factual support standard in a case where the parties had engaged in "some discovery" on the issue of jurisdiction).

At the motion to dismiss stage, all pleadings and affidavits are construed, and any doubts are resolved, in the light most favorable to plaintiff.  <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997); <u>CutCo Indus., Inc. v. Naughton</u>, 806 F.2d 361, 365 (2d Cir. 1986).  However, the Court will not draw "argumentative inferences" in plaintiff's favor, <u>Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992), nor will the Court accept conclusory allegations as support for the exercise of personal jurisdiction, <u>Mende v.</u>

<u>Milestone Tech. Inc.</u>, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).[5]

**B. *Personal Jurisdiction Under Rule 4(k)(2).***

**1. *The Requirements of Rule 4(k)(2).***

Plaintiffs in both cases assert jurisdiction over SPDC pursuant to Federal Rule of Civil Procedure 4(k)(2). (Opp'n 5.) To establish personal jurisdiction over a defendant pursuant to Rule 4(k)(2), plaintiff must show that (1) plaintiff's cause of action arises under federal law, (2) defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one

---

[5] Both Plaintiffs and SPDC have submitted affidavits and other documentation outside of the pleadings. Plaintiffs submit a number of exhibits in support of their jurisdictional allegations, along with a document styled as a Federal Rule of Evidence 1006 Summary ("FRE 1006 Summary"). SPDC submits a sworn declaration of Babatunde Aribido, Legal Manager and Company Secretary of SPDC ("Aribido Declaration"). SPDC objects to Plaintiffs' FRE 1006 Summary, arguing that it is an "inadmissible reiteration of counsels' arguments." (Reply 1 n.1.) Plaintiffs contend that the Court should not consider the Aribido Declaration because it "has not been subjected to cross examination and is self-serving." (Opp'n 18.)

Generally, because "[a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." <u>John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., Ltd.</u>, No. 91 Civ. 3644, 1992 WL 26765, at *6 n.1 (S.D.N.Y. Feb. 5, 1992) (citing, <u>inter alia</u>, 5 Wright & Miller, Federal Civil Practice & Procedure: Civil 2d § 1351); <u>see also</u> <u>Visual Sciences, Inc. v. Integrated Commc'ns, Inc.</u>, 660 F.2d 56, 58 (2d Cir. 1981). With respect to SPDC's objection to Plaintiffs' FRE 1006 Summary, because the Court grants SPDC's motion to dismiss even considering the FRE 1006 Summary, the Court declines to consider SPDC's objection. With respect to Plaintiffs' objection to the Aribido Declaration, the Court is authorized on a motion to dismiss to consider sworn declarations in support of the motion, so long as the Court resolves any factual disputes in the non-moving party's favor. <u>See</u> <u>Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala</u>, 989 F.2d 572, 580 (2d Cir. 1993). The Court will therefore consider the Aribido Declaration, but resolve any factual disputes it presents in Plaintiffs' favor.

State, and (3) the exercise of personal jurisdiction over defendant is consistent with the standards of due process.  <u>See</u> Fed. R. Civ. P. 4(k)(2); <u>Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.</u>, 956 F. Supp. 427, 434 (S.D.N.Y. 1996).

The first two requirements of Rule 4(k)(2) are uncontested for the purposes of this motion.  Therefore, the dispositive issue is whether Plaintiffs have made a prima facie showing that the exercise of jurisdiction over SPDC would be consistent with the standards of due process.  <u>Chew v. Dietrich</u>, 143 F.3d 24, 28 (2d Cir. 1998); <u>Eskofot A/S v. E.I. Du Pont De Nemours & Co.</u>, 872 F. Supp. 81, 87 (S.D.N.Y. 1995).

### *2.    The Requirements of Due Process.*

The due process requirement for personal jurisdiction has two related components: the "minimum contacts" test and the "reasonableness" test.  <u>Metropolitan Life</u>, 84 F.3d at 567; <u>see also</u> <u>Chew</u>, 143 F.3d at 28 (applying the minimum contacts test and the reasonableness test in a Rule 4(k)(2) personal jurisdiction inquiry).  The "minimum contacts" test requires plaintiff to show that defendant has sufficient aggregate contacts with the forum state to justify the exercise of personal jurisdiction.  <u>See</u> <u>Metropolitan Life</u>, 84 F.3d at 567 (citing <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  The "reasonableness" test asks whether the exercise of jurisdiction over defendant would be "reasonable," that is, whether the assertion of personal

jurisdiction comports with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113 (1987). Although both components of the due process requirement are equally important, if Plaintiffs fail to satisfy the minimum contacts test, the due process inquiry ends, and the Court need not proceed with the reasonableness analysis. Metropolitan Life, 84 F.3d at 568 (citing Donatelli v. National Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990)).

### C. Plaintiffs Fail to Establish that SPDC has Sufficient Minimum Contacts with the United States.

#### 1. The Minimum Contacts Test.

To satisfy the minimum contacts test in the Rule 4(k)(2) context, plaintiff must show that defendant has sufficient aggregate contacts with the United States as a whole to justify the exercise of personal jurisdiction. See Chew, 143 F.3d at 28 n.4 (noting that Rule 4(k)(2) personal jurisdiction analysis looks to "defendant's contacts throughout the United States"). In performing this analysis, the Court must first determine whether plaintiff asserts "specific jurisdiction" or "general jurisdiction" over defendant.

> Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum [] and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.

10

<u>Metropolitan Life</u>, 84 F.3d at 567-68 (quoting <u>Helicopteros</u>
<u>Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414-16 & nn.8-9
(1984)).  Specific jurisdiction does not exist in this case
because Plaintiffs' causes of action arise out of SPDC's alleged
conduct in Nigeria, and not its contacts with the United States.
Plaintiffs must therefore rely on the Court's general
jurisdiction.

In the general jurisdiction context, the minimum contacts
test requires plaintiff to show that defendant has "continuous
and systematic general business contacts" with the United States.
<u>Helicopteros</u>, 466 U.S. at 416; <u>see also</u> <u>Frontera Resources</u>
<u>Azerbaijan Corp. v. State Oil Co.</u>, 479 F. Supp. 2d 376, 386
(S.D.N.Y. 2007).  In assessing whether plaintiff has met this
"continuous and systematic" standard, the Court must consider
defendant's contacts with the United States "over a period that
is reasonable under the circumstances - up to and including the
date the suit was filed."  <u>Metropolitan Life</u>, 84 F.3d at 569.
These contacts must be considered a whole, and not individually.
<u>Id.</u> at 580.  The "continuous and systematic" standard for general
jurisdiction is "stringent," <u>id.</u> at 568, and requires plaintiff
to prove that defendant's contacts "approximate physical
presence" in the United States, <u>In re Ski Train Fire in Kaprun,</u>
<u>Austria</u>, 257 F. Supp. 2d 717, 730 (S.D.N.Y. 2003) (citing <u>Gates</u>
<u>Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1331 (9th Cir. 1984)).

## 2. *Plaintiffs' Jurisdictional Allegations.*

Plaintiffs identify roughly five categories of general business contacts between SPDC and the United States during the period from 1987 through 2004, that they contend amount to "continuous and systematic general business contacts" with the United States. First, a substantial quantity of energy products produced by SPDC in Nigeria (crude oil and natural gas) was sold in the United States by certain third-party entities from at least 1990 through 2003. (Opp'n 8.) Plaintiffs do not allege that SPDC directly participated in any sales transactions with United States buyers, or that any of sales of its energy products were actually conducted in the United States. Rather, Plaintiffs' allegations establish only that crude oil and natural gas produced by SPDC in Nigeria eventually reached the United States market through transactions conducted by certain third-party entities.[6]

Second, Plaintiffs allege that SPDC has conducted a "long

_____

[6] With respect to SPDC-produced crude oil, SPDC states that these sales were conducted exclusively by Shell International Trading Company ("SITCO"), a separate legal entity, "without any input from SPDC." (Def.'s Mem. Law. Supp. Mot. to Dismiss 7; Aribido Decl. ¶ 4.) Plaintiffs contest this assertion, but fail to make specific factual allegations contradicting SPDC's claim. (Opp'n 9.) The Court will not accept Plaintiffs conclusory allegations as true, and therefore adopts SPDC's characterization of the sale structure of these crude oil sales. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

With respect to SPDC-produced natural gas, Plaintiffs admit that such energy products were exported to the United States by Nigeria Liquified Natural Gas ("NLNG"), a "separate entity." (Opp'n 9.)

running public relations campaign aimed at the United States."
(Opp'n 3.)  Specifically, Plaintiffs allege that SPDC maintained
a "public relations strategy" during the 1990s designed to
address international concerns regarding its role in the human
rights crisis that developed in the Ogoni region of Nigeria.[7]
(Opp'n 12.)  As proof of this strategy, Plaintiffs point to a
document entitled "Nigeria Issue: Strategy and Action Plans,
October 1997 - May 1998," dated November 24, 1997.  (Pls.' Ex.
18A.)  This document, Plaintiffs allege, establishes that SPDC
sought to "cultivate active relationships" with various
international NGOs and media outlets, some of which were based in
the United States.  (Pls.' Ex. 18A.)  Plaintiffs also note that
the document describes "positive relationships" between SPDC and
a few U.S.-based organizations, as well as "senior management of
the international press corps."  (Opp'n 12; Pls.' Ex. 18A.)
Apart from the prospective public relations plan described in the
"Nigeria Issue" document, Plaintiffs also allege that on at least
three specific occasions during the relevant time period, SPDC
directly corresponded with certain of these media outlets to
respond to press reports regarding the Ogoni crisis.  (Pls.' Exs.
18C, 18E, 18F, 18I.)  Plaintiffs further maintain that officers

---

[7] Plaintiffs allege that SPDC's public relations strategy is
"ongoing," but allege no facts to support this assertion.  The Court
need not credit such conclusory allegations as true on a motion to
dismiss.  See Jazini, 148 F.3d at 184 (noting that conclusory
allegations are insufficient to establish a prima facie case of
personal jurisdiction).

or agents of SPDC visited "government and private persons" in the United States on at least three separate occasions during the 1990s, in an attempt to "influence opinion" regarding SPDC's operation in Nigeria. (Opp'n 13; Pls.' Exs. 6, 18B, 18C.)

Third, Plaintiffs allege that Shell People Services ("SPS"), a purported "sister company" of SPDC based in Houston, TX, engaged in recruiting activities in the United States on behalf of SPDC. Plaintiffs claim that "[g]raduates from U.S. schools are encouraged to submit applications for positions with SPDC via surface mail and fax, directing inquiries to the SPS Houston office." (Opp'n 14.) Plaintiffs allege that SPS "operated as an agent for SPDC and other arms of the Shell group." (Opp'n 4.)

Fourth, Plaintiffs allege that SPDC employees visited the United States on an annual basis to attend various trade shows and conferences (Opp'n 4), and to participate in training sessions (Opp'n 15). With respect to the trade show visits, Plaintiffs point to evidence that during the relevant time period, three then-current SPDC employees regularly attended the annual conferences of certain energy trade groups held in the United States.[8] (Def.'s Mem. Law Supp. Mot. to Dismiss 4 n.9.)

_____

[8] Discovery taken from SPDC establishes that:

SPDC employee Egbert Imomoh traveled to the United States almost yearly to attend the Offshore Technology Conference in Houston and the Society of Petroleum Engineers [sic] throughout the 1990s until his retirement in 2002. He also attended a conference by the Corporate Counsel for Africa held in Houston in May 1999. SPDC employee George Ukpong attended the annual

With respect to the training visits, Plaintiffs allege that, sometime before 2003, a group of SPDC employees participated in certain training sessions, a portion of which were conducted in the United States, over a period of thirty-six months.[9]

Fifth, Plaintiffs claim that SPDC has contracted with four U.S.-based companies, and has participated in projects that received significant financial assistance from one federal government agency. Specifically, Plaintiffs claim that SPDC has entered into contracts with (1) Baker Hughes for the construction of a barge in New Orleans, LA to be used in connection with oil exploration in Nigeria, and (2) Halliburton Co., Western Atlas International, Inc., and Pecten, respectively, for services

---

seminars and exhibitions of the American Society for Industrial Security in the United States from approximately 1996/1997 through 2004. Former SPDC employee Victor Oteri attended the annual seminars and exhibitions of the American Society for Industrial Security in the United States from approximately 1988 to 1995, when he retired. Mr. Oteri attended a 'short course in the National Crime Prevention Institute in the University of Louisville' sometime between 1987 and 1990 before becoming the Security Advisor for SPDC.

(Defs.' Mem. Law Supp. Mot. to Dismiss 4 n.9 (internal citations omitted).)

[9] In support of this allegation, Plaintiffs point to a "Shell Nigeria" Press Release, which states that "some Nigerian crew . . . have been undergoing training in the UK and the United States for about 36 months" in connection with an oil exploration project in Nigeria. (Pls.' Ex. 14.) SPDC asserts that the reference to "some Nigerian crew" actually refers to employees of Shell Nigeria Exploration and Production Company Ltd. ("SNEPCO"), a separate legal entity. (Reply 6.) At this stage, however, the Court must resolve all ambiguities in Plaintiffs' favor, and therefore will assume for purposes of this motion that "some Nigerian crew" includes at least some employees of SPDC, and that at least a portion of the training described occurred in the United States.

related to certain crude oil and natural gas exploration and production projects in Nigeria.[10]  (Opp'n 16-17.)  With respect to SPDC's alleged contact with a U.S. government agency, Plaintiffs contend that SPDC has "participat[ed] extensively in projects receiving significant financial assistance" from the United States Agency for International Development ("USAID"). (Opp'n 4.)  Plaintiffs specify only two such projects in their submissions, the "West African Gap Pipeline (WAGP) Project" and (2) the "Cassava Enterprise Development Project," both of which were principally based in Africa.  (Pls.' Exs. 16, 17 & 20.)

### 3.  *Assessment of Minimum Contacts.*

SPDC's alleged contacts with the United States, taken as a whole, fail to establish the sort of "continuous and systematic general business contacts" required for the assertion of general jurisdiction.  The basic contours of what constitute "continuous and systematic general business contacts" are only roughly defined.  See Dearwater v. Bond Mfg. Co., No. 06-CV-154, 2007 WL 2745321, at *6 (D. Vt. Sept. 19, 2007) (noting that the Supreme

---

[10] With respect to SPDC's contracts with Halliburton, Plaintiffs point to documents stating that Halliburton has contracted with SPDC to (1) "provide cementing and drilling fluids services on Shell's EA Development offshore Nigeria [sic]" (Pls.' Ex. 13A), and (2) develop "grass-roots gas compression facilities for the Obigbo Node associated gas-gathering project" in Nigeria (Pls.' Ex. 13B).  With respect to Western Atlas International, Inc., Plaintiffs note that SPDC's 1991 Annual Report named the company one of SPDC's "major overseas suppliers."  (Pls.' Ex. 13C).  As for Pecten, Plaintiffs allege that SPDC was engaged in a "major evaluation effort" of potential oil-production sites in certain unspecified locations.  (Pls.' Ex. 13D.)

Court has explicated only the "outer limits of what constitutes continuous and systematic business operations in a forum state sufficient for general jurisdiction").  Nonetheless, the Second Circuit's decision in Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ("Metropolitan Life"), in which the court elaborated on the substance of the "continuous and systematic" standard, provides a useful starting point for the Court's analysis in this case.

In Metropolitan Life, the Second Circuit concluded that the exercise of general jurisdiction in Vermont over an out-of-state defendant was proper where $4 million worth of defendant's products were sold in Vermont, and defendant maintained close business relationships with "independent" dealers and "authorized" builders using its products in the State, sent employees on business-related visits into the State on over 150 separate occasions, conducted a national advertising campaign that reached Vermont markets, provided comprehensive product support services to Vermont residents, and "deliberate[ly] target[ed]" Vermont companies as sales prospects.  Id. at 573. The court held that although defendant's $4 million worth of sales in the forum, "standing alone, may not have been sufficient," defendant's other contacts with the state were "more than sporadic and occasional," and thus "tip[ped] the balance" in favor of exercising general jurisdiction.  Id.

In this case, SPDC's alleged sales in the United States are similarly insufficient to establish "continuous and systematic general business contacts" for general jurisdiction purposes. However, unlike the defendant's conduct in Metropolitan Life, SPDC's other alleged contacts with the relevant forum, in this case the United States, are far too "sporadic and occasional" to tip the balance in favor of exercising general jurisdiction.

### a.   SPDC's Alleged Sales in the United States.

The fact that certain third-party entities sold into the United States market, a substantial quantity of energy products produced by SPDC in Nigeria does not support the exercise of general jurisdiction.  Where sales of a defendant's products in a particular forum are made by third-party entities, those sales do not establish "continuous and systematic general business contacts" for general jurisdiction purposes.  See, e.g., Bearry v. Beech Aircraft Corp., 818 F.2d 370, 376 (5th Cir. 1987) (finding the exercise of general jurisdiction over a foreign corporation improper, despite the fact that the corporation had $250 million in sales in the forum state, because all such sales were completed outside the forum, and the mere flow of the defendant's products into the forum did not "create a general presence in that state"); see also McShan v. Omega Louis Brandt et Frere, S.A., 536 F.2d 516, 517-18 (2d Cir. 1976) ("Sales, no matter how substantial, of a foreign manufacturer's product in

18

New York through an independent agency do not make the foreigner amenable to suit in New York . . . .").  In this case, Plaintiffs merely allege that crude oil and natural gas produced by SPDC <u>in Nigeria</u> were eventually sold on the United States market by third-party entities <u>other than SPDC</u>.  Plaintiffs do not allege that SPDC itself sold its energy products in the United States.  Thus, Plaintiffs' allegations do not establish "continuous and systematic business contacts" for the purposes of general jurisdiction.[11]  <u>See</u> <u>Indemnity Ins. Co. v. K-Line America, Inc.</u>, No. 06 Civ. 0615, 2007 WL 1732435, at *5 (S.D.N.Y. Jun. 14, 2007) (holding that the indirect sale of a foreign corporation's product in the forum state is insufficient to confer general jurisdiction); <u>Yanouskiy v. Eldorado Logistics Sys., Inc.</u>, No. 05-CV-2202, 2006 WL 3050871, at *4 (E.D.N.Y. Oct. 20, 2006) ("A foreign corporation is not present in New York merely because an independent agency sells its products here, 'however substantial in amount the resulting orders.'") (quoting <u>Laufer v. Ostrow</u>, 434 N.E.2d 692, 695 (1982)).

---

[11] Because Plaintiffs do not allege that SPDC engaged in direct sales of its energy products to buyers in the United States, Plaintiffs' reliance on cases where courts justified the exercise of jurisdiction over defendants based on the defendants' direct sales, marketing, and solicitation in the forum state is misplaced.  <u>See, e.g.</u>, <u>LSI Indus. Inc. v. Hubbell Lighting, Inc.</u>, 232 F.3d 1369, 1375 (Fed. Cir. 2000); <u>Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.</u>, No. 05 Civ. 9994, 2007 WL 747807, at *3 (S.D.N.Y. Mar. 30, 2007); <u>Zipper v. Nichtern</u>, No. 03 Civ. 5796, 2007 WL 1041667, at *5-6 (E.D.N.Y. Mar. 9, 2007); <u>In re Complaint of China Navigation Co. Ltd.</u>, 2005 WL 3409739, at *2 (S.D. Tex. Dec. 12, 2005).

Plaintiffs nonetheless argue that the sale of SPDC's crude oil in the United States confers general jurisdiction because Shell International Trading Company ("SITCO"), one of the third-party entities alleged to have sold SPDC's oil in the United States, acts as SPDC's "agent or partner rather than an arms-length buyer." (Opp'n 10.) Although a court may assert jurisdiction over a foreign corporation based on the forum contacts of an affiliate where the affiliate is an "agent" of the corporation, Jazini, 148 F.3d at 184, Plaintiffs here fail to allege sufficient facts to establish an agency relationship between the two companies.

An agency relationship exists between a foreign corporation and an affiliate where the affiliate "renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). Here, the only "service" Plaintiffs allege SITCO performed "on behalf of" SPDC in the United States is the "sale of substantial amounts of crude oil." (Opp'n 19.) Plaintiffs also allege that SITCO was referred to as an "affiliate" of SPDC in a letter by SITCO's president to the Nigerian Ministry of Petroleum & Mineral Resources, that SPDC expressed "concern" for SITCO's income during contract

negotiations with the Nigerian National Petroleum Company
("NNPC"), and that SITCO was losing money in its dealings with
SPDC. (Opp'n 10.) These allegations are insufficient to
establish the sort of interdependence necessary to prove the
existence of an agency relationship between the two companies.
See, e.g., Stutts v. De Dietrich Group, 465 F. Supp. 2d 156, 162-
63, 166 (E.D.N.Y. 2006) (finding no agency relationship between a
foreign defendant and its domestic affiliate despite plaintiff's
allegations that the affiliate exclusively sold defendant's
products in the forum); cf. Jazini, 148 F.3d at 184 (finding that
a foreign corporation is not "present" in New York simply because
it sells its products through a New York distributor).
Plaintiffs therefore have not shown that SITCO's oil sales in the
United States are attributable to SPDC for purposes of general
jurisdiction.[12]

---

[12] Plaintiffs rely on Turbana Corp. v. M/V "Summer Meadows", No.
03 Civ. 2099, 2003 WL 22852742 (S.D.N.Y. Dec. 2, 2003) for the
proposition that SITCO's sale of SPDC's oil in the United States
establishes a prima facie case of jurisdiction. (Opp'n 9-10.) In
Turbana, plaintiff alleged that defendant's "regular supply and
shipment of bananas and plantains to the United States" constituted
sufficient contacts for general jurisdiction purposes. Turbana, 2003
WL 22852742, at* 5. Defendant replied that a separate corporate
entity was independently responsible for those shipments. Id. The
court concluded that "whether these significant contacts may be
attributed to [defendant] turns in large part on a determination of
the degree to which [defendant] and [the separate corporate entity]
maintain separate and independent corporate identities - a
determination that this Court cannot make without further
information." Id. In that context, the court held that plaintiff
"has made a sufficient showing to meet the threshold necessary to
establish a prima facie case of jurisdiction under Rule 4(k)(2), or at
least to suggest that limited discovery could serve to complete any
insufficiency in its showing." Id. (emphasis added).

### b. SPDC's Other Contacts with the United States.

SPDC's remaining contacts with the United States are "sporadic and occasional," and therefore are insufficient to support a finding of continuous and systematic general business contacts. <u>Metropolitan Life</u>, 84 F.3d at 573. First, SPDC's alleged public relations activities in the United States were far too limited in scope to support a finding of general jurisdiction. A court may exercise general jurisdiction over a foreign corporation where the corporation engages in "extensive public relations" activities in the forum designed to promote the corporation's principal interests. <u>See, e.g.</u>, <u>Estate of Ungar, et al. v. Palestinian Auth., et al.</u>, 325 F. Supp. 2d 15, 51, 48-54 (D.R.I. 2004) (exercising general jurisdiction over a foreign defendant, which spent millions of dollars on media and public relations projects in the forum, including engaging an American

---

The Turbana court's use of the conjunction "or at least" makes it unclear whether the court found plaintiff's allegations sufficient to establish a prima facie case of jurisdiction, or merely the lesser burden for justifying additional jurisdictional discovery. To the extent that Turbana held that a prima facie case of jurisdiction exists where there is uncertainty regarding the corporate relationship between a foreign defendant and its in-forum affiliate, Turbana is not consistent with Second Circuit precedent, and the Court declines to follow it here. See Jazini, 148 F.3d at 185-86 (finding that plaintiffs have not established a prima facie case of jurisdiction where they set forth "sparse" and "conclusory" allegations of an agency relationship between a foreign corporate defendant and its in-forum affiliate); Stutts, 465 F. Supp. 2d at 166 (refusing to find prima facie case of jurisdiction where plaintiff failed to allege sufficient facts regarding the "interdependence" between the foreign defendant and its in-forum affiliate) (citing Jerge v. Potter, No. 99-CV-0312E, 2000 WL 1160459, at *5 (W.D.N.Y. Aug. 11, 2000)).

public relations firm, giving numerous interviews to print and televised media outlets, lobbying Congress, and giving lectures to various audiences around the country); Wiwa, 226 F.3d at 98 (finding sufficient minimum contacts for general jurisdiction purposes where corporation had an Investor Relations Office in the forum, which engaged in wide-ranging public relations work with potential investors and was "permanently dedicated to promoting the [corporation's] interests").

In this case, SPDC's alleged public relations activities were limited to statements concerning its role with respect to the human rights crisis in the Ogoni region, and do not appear to have been part of any sustained, long-running effort to promote SPDC's interests in the United States. The specific public relations activities alleged on the part of SPDC (e.g., maintaining "positive relationships" with U.S. organizations and media companies, developing a public relations plan, responding to inquiries from a few U.S.-based media outlets, sending SPDC agents on a small number of visits to persons in the U.S.) were, in fact, limited and sporadic. With respect to SPDC's alleged "positive relationships" with U.S. organizations and media companies (Opp'n 12), Plaintiffs fail to allege what specific acts SPDC has taken to maintain and develop these relationships. Moreover, there is no evidence that the bulk of SPDC's engagement with these entities even occurred in the United States. As for

SPDC's alleged public relations plan (Pls.' Ex. 18A), Plaintiffs

do not allege that any of the initiatives outlined in the

"Nigeria Issue" document were ever implemented.  With respect to

the alleged communications between SPDC and persons in the United

States, these meetings were, at best, sporadic and irregular.

Plaintiffs' allegations are therefore insufficient to support a

finding that SPDC maintained a continuous and systematic presence

in the United States.[13]  See Hollar v. Philip Morris, Inc., 43 F.

Supp. 2d 794, 801-02 (N.D. Ohio 1998) (refusing to exercise

general jurisdiction over a foreign defendant where defendant's

contacts "specifically directed" at the forum, including lobbying

efforts, commercial broadcasts, and dissemination of public

relations materials, were "minimal and sporadic"); Jayne v. Royal

Jordanian Airlines Corp., 502 F. Supp. 848, 856 (S.D.N.Y. 1980)

(finding foreign corporation's public relations work in the

forum, which included hiring a public relations firm and

---

[13] The decisions Plaintiffs cite in support of exercising jurisdiction over SPDC based on SPDC's alleged public relations activities are distinguishable.  National Association of Home Inspectors v. National Association of Certified Home Inspectors, No. 06-CV-11957, 2006 WL 3104574, (S.D.N.Y. Oct. 31, 2006) and Chamberlain v. American Tobacco Co., 96-CV-2005, 1999 WL 33994451 (N.D. Ohio Nov. 19, 1999) involved the assertion of specific jurisdiction, not general jurisdiction, over the defendant.  Klein v. Hongkong and Shanghai Hotels, Ltd., No. 06 Civ. 377, 2007 WL 1098735 (S.D.N.Y. Apr. 9, 2007) and Klonis v. National Bank of Greece, S.A., 492 F. Supp. 2d 293 (S.D.N.Y. 2007) did not involve allegations of public relations work on the part of the defendants in each case.  Finally, Rubin v. Hamas-Islamic Resistance Movement, No. 02 Civ. 0975, 2004 WL 2216489 (D.D.C. Sept. 27, 2004) addressed an uncontested motion for default judgment, where plaintiffs presented "detailed testimony" regarding defendant's public relations activities in the United States.

advertising in a forum newspaper, insufficient for general

jurisdiction purposes where such work was "incidental" to

corporation's primary commercial activities).

Second, the Court cannot attribute the recruiting activities

of SPS in the United States to SPDC for jurisdictional purposes.

A foreign corporation may be subject to a court's general

jurisdiction based on the in-forum activities of an affiliate

where the affiliate is either an "agent" or "mere department" of

the foreign corporation. See Wiwa, 226 F.3d at 97; Jazini, 148

F.3d at 184. In this case, although Plaintiffs label SPS an

"agent" of SPDC, they allege no facts detailing the purported

agency relationship between the two entities. (Opp'n 15.) The

Court need not credit such conclusory allegations on a motion to

dismiss. Jazini, 148 F.3d at 184. SPS's alleged recruiting

activities in the United States therefore cannot be attributed to

SPDC.[14] Id.

---

[14] Moreover, even if the Court credited Plaintiffs' allegation of
an agency relationship between SPS and SPDC, SPS's alleged recruiting
activities on behalf of SPDC were not sufficiently "continuous and
systematic" to warrant the exercise of general jurisdiction over SPDC.
Plaintiffs' allegations and supporting exhibits merely establish that
applicants interested in positions with various affiliated Shell
entities, including SPDC, could submit applications to recruitment
offices around the world, including to SPS. (Pls.' Exs. 9 and 11.)
Plaintiffs make no allegations as to the scope of SPS's recruiting
activities on behalf of SPDC, or the number of employees recruited by
SPS for SPDC positions. Therefore, even if the Court attributed SPS's
recruiting activities to SPDC, Plaintiffs' allegations would be
insufficient to establish the sort of active and sustained recruiting
activities necessary to subject SPDC to the Court's general
jurisdiction. See, e.g., In re Ski Train Fire, 343 F. Supp. 2d 208,
215-16 n.7 (S.D.N.Y. 2004) (finding exercise of jurisdiction

Third, the few visits to the United States taken by SPDC employees to attend trade shows and training sessions cannot support a finding of continuous and systematic general business contacts. Plaintiffs allege only that three then-current SPDC employees regularly attended annual trade shows in the United States (Def.'s Mem. Law Supp. Mot. to Dismiss 4 n.9), and that some SPDC employees took part in training sessions held in the United States and the United Kingdom (Pls.' Ex. 14). These few isolated visits do not amount to the sort of continuous and systematic contact with the forum sufficient to exercise general jurisdiction. See, e.g., Helicopteros, 466 U.S. at 411, 18 (refusing to exercise general jurisdiction over foreign corporation where corporation sent personnel into the forum on a periodic basis over the course of three years for various training sessions and technical consultations); Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1045 (2d Cir. 1990) (concluding that thirteen business trips over a period of eighteen months by employees of foreign corporation into the forum did not justify exercise of general jurisdiction); Estate of Ungar v. Palestinian Auth., 400 F. Supp. 2d 541, 550 (S.D.N.Y. 2005) (finding that attendance at business conferences "is not so continuous or permanent a presence as to confer

_____

"inappropriate" where there was no evidence that foreign defendant actually recruited employees in the forum, despite having mechanisms available to do so).

general jurisdiction" over a foreign defendant) (internal quotations omitted); <u>Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.</u>, 495 F. Supp. 253, 257 (S.D.N.Y. 1980) ("Occasional visits by [a foreign defendant] to [forum] trade shows . . . are not sufficient contacts to support jurisdiction."); <u>cf. Metropolitan Life</u>, 84 F.3d at 573 (exercising jurisdiction where defendant had sent employees into the forum state on over 150 separate occasions to provide product and sales support to authorized dealers).

Fourth, the fact that SPDC contracted with four U.S.-based companies (e.g., Baker Hughes, Halliburton Co., Western Atlas International, Inc., and Pecten), as described in Section I.C.2 above, to assist in certain crude oil and natural gas projects outside the United States does not establish "continuous and systematic general business contacts" with the United States. <u>See, e.g.</u>, <u>Frontera</u>, 479 F. Supp. 2d at 387 (holding that a foreign corporate defendant's production-sharing contracts with several American oil companies "does not demonstrate a continuous and systematic presence in the United States"); <u>cf. Helicopteros</u>, 466 U.S. at 416 (holding that a foreign defendant's multiple purchases from forum companies were not sufficient to establish general jurisdiction).  Plaintiffs' related allegation regarding SPDC's participation in various development projects with USAID is similarly irrelevant to the jurisdictional analysis, because

Plaintiffs do not allege that any of these projects have any connection to the United States.  See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 261 (3d Cir. 2000) (finding no basis for jurisdiction where Taiwanese corporation "availed itself of the assistance of eight U.S. based companies who solicited its business in Taiwan in order to build a plant in Taiwan").

*     *     *     *     *

In sum, SPDC's alleged contacts with the United States, considered in the aggregate, are insufficient to establish the required minimum contacts for general jurisdiction purposes. SPDC does not have an office, place of business, postal address, or telephone listing in the United States; nor is it licensed to do business in any state or territory of the United States. (Aribido Decl. ¶¶ 7a, 7c.)  SPDC also does not own any real property in the United States, or maintain any bank accounts in this country.  (Arbidio Decl. ¶ 7h.)  The limited contacts SPDC is alleged to have with the United States do not establish the sort of continuous and systematic presence required for the exercise of general jurisdiction.  See, e.g., Bearry, 818 F.2d at 375-76 (finding that defendant's contacts with Texas "will not support a finding of continuous and systematic contacts on which general jurisdiction could be based," despite the fact that nearly $250 million worth of defendant's products were sold in

the forum, defendant engaged in a nationwide marketing campaign which reached Texas residents, one of defendant's wholly owned subsidiaries operated in Texas, defendant's "representatives" occasionally visited Texas to offer product support and sales incentives to its in-state dealers, and defendant maintained production, manufacturing and service contracts with various Texas-based companies); Oceanic Exploration Co. V. ConocoPhillips, Inc., No. 04 Civ. 332, 2006 WL 2711527, at *14 (D.D.C. Sept. 21, 2006) (finding no basis for jurisdiction under Rule 4(k)(2) in plaintiff's allegations that defendant sold oil to the United States, signed production-sharing contracts with U.S. companies, and made deposits into bank accounts in New York).

Plaintiffs therefore fail to establish a prima facie case of sufficient minimum contacts, and thus cannot prove that the exercise of jurisdiction over SPDC would be consistent with the standards of due process. Accordingly, Rule 4(k)(2) cannot provide a basis for personal jurisdiction over SPDC.

### D. *ADDITIONAL JURISDICTIONAL DISCOVERY IS UNWARRANTED.*

In cases, such as this, where plaintiff has failed to make a prima facie case of personal jurisdiction, a district court has broad discretion to permit plaintiff to conduct additional jurisdictional discovery to obtain further evidence relevant to the existence of jurisdiction. See Daventree Ltd. v. Republic of

<u>Azerbaijan</u>, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (quoting <u>APWU v. Potter</u>, 343 F.3d 619, 627 (2d Cir. 2003)); <u>cf.</u> <u>Ehrenfeld v. Mahfouz</u>, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (stating that it would be "legal error" for a district court to "forbid[] jurisdictional discovery any time plaintiff does not make a prima facie showing of jurisdiction") (citing <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003)). Such discovery may be authorized where plaintiff has made "a threshold showing that there is some basis for the assertion of jurisdiction." <u>Daval Steel Prods. v. M.V. Juraj Dalmatinac</u>, 718 F. Supp. 159, 162 (S.D.N.Y. 1989); <u>see also</u> <u>Strategem Dev. Corp. v. Heron Int'l N.V.</u>, 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (authorizing jurisdictional discovery where plaintiff "made a sufficient start" toward establishing jurisdiction). The Second Circuit has cautioned, however, that courts should not permit additional jurisdictional discovery where plaintiffs have made only "sparse" and "conclusory" allegations of personal jurisdiction. <u>Jazini</u>, 148 F.3d at 185.

In this case, the Court concludes that Plaintiffs' jurisdictional allegations are too vague and conclusory to warrant additional discovery. <u>See, e.g.</u>, <u>Warner Bros. Entertainment Inc. v. Ideal World Direct</u>, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (denying jurisdictional discovery where plaintiff's jurisdictional allegations were "generalized" and

failed to allege any "specific connection" to the forum);

SODEPAC, S.A. v. Choyang Park, No. 02 Civ. 3927, 2002 WL
31296341, at *5 (S.D.N.Y. Oct. 10, 2002) (denying jurisdictional
discovery where plaintiff made only "[v]ague and generalized"
allegations insufficient to establish a prima facie case); Celton
Man Trade, Inc. v. Utex S.A., No. 84 Civ. 8179, 1986 WL 6788, at
*4 n.3 (S.D.N.Y. Jun. 12, 1986) (denying jurisdictional discovery
where plaintiff offered only "unsupported speculation" that
defendant had done business in the forum)

The Court's conclusion is reinforced by the fact that
Plaintiffs have had ample opportunity to obtain and present
evidence with respect to SPDC's general business contacts with
the United States. A court acts "well within its discretion in
declining to grant further discovery" where a plaintiff has had
"ample opportunity to uncover and present evidence relating to
the events bearing on the jurisdictional question." APWU, 343
F.3d at 627. In this case, Plaintiffs have conducted extensive
discovery against all Defendants, including SPDC, in these and
their related cases over the past ten years. This discovery has
included thirteen depositions of current and former SPDC
employees, including two former managing directors, and requests
for admission and interrogatories on SPDC's corporate structure
and business. (Def.'s Mem. Law. Supp. Mot. to Dismiss 4.) The
Court therefore exercises its discretion to deny Plaintiffs

additional jurisdictional discovery against SPDC.

## II. OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S ORDER GRANTING SPDC'S MOTION TO PRECLUDE PLAINTIFFS FROM TAKING FURTHER JURISDICTIONAL DISCOVERY.

By Order, dated February 26, 2007, Magistrate Judge Pitman granted SPDC's Motion to Preclude Further Jurisdictional Discovery in <u>Wiwa III</u> ("Order") "for the reasons stated on the record in open court" during oral argument.[15] The <u>Wiwa III</u> Plaintiffs filed timely written objections to the Order, arguing that Magistrate Judge Pitman erred in denying them additional jurisdictional discovery.

As described above, the Court itself has concluded that Plaintiffs in both cases are not entitled to additional jurisdictional discovery against SPDC. The Court therefore need not consider whether the <u>Wiwa III</u> Plaintiffs' objections set forth sufficient grounds to set aside or modify Magistrate Judge Pitman's ruling on the same issue.

─────────────────────────────

[15] As described above, this Order was originally entered in both <u>Kiobel</u> and <u>Wiwa III</u>, but was subsequently modified to bind only the <u>Wiwa III</u> parties.

**CONCLUSION**

For the reasons set forth above, SPDC's Motion to Dismiss is granted in both Kiobel and Wiwa III. The Court further concludes that additional jurisdictional discovery is unwarranted in either case. Given this ruling, the Court need not consider the Wiwa III Plaintiffs' objections to Magistrate Judge Pitman's Feburary 26, 2007 Order. Wiwa III is therefore closed; all pending motions in that case are moot.

SO ORDERED.

Dated:     New York, New York
           March 4 , 2008

                          Kimba M. Wood
                   United States District Judge